IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

M. LEE MIXELL,                    :
                                  :         CIVIL NO.  4:05-CV-0089
            Plaintiff             :
                                  :         (Judge Jones)
            v.                    :
                                  :         (Magistrate Judge Mannion)
JOANNE B. BARNHART,               :
COMMISSIONER OF SOCIAL            :
SECURITY,                         :
                                  :
            Defendant.            :

## MEMORANDUM AND ORDER

February 24, 2006

## THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On March 4, 1998, the plaintiff M. Lee Mixell ("Plaintiff" or "Mixell")

applied for Supplemental Security Income ("SSI") and alleged that he had been

disabled since October 23, 1978, due to asthma, fibromyalgia, a learning disorder,

and knee problems.  (See T.R. at 34; see also Rep. & Rec. at 1).

After Plaintiff's claim was denied initially and upon reconsideration, an

administrative hearing in the case was held before an Administrative Law Judge

("ALJ") on May 20, 2000.  (See T.R. at 32-33, 38; see also Rep. & Rec. at 2).  At

the hearing, Plaintiff and a vocational expert testified.  On July 21, 2000, the ALJ

issued an unfavorable decision.  Plaintiff filed a request for review of the ALJ's

1

decision which was denied on August 3, 2001 by the Appeals Council. Accordingly, the ALJ's decision stood as the "final decision" of the Commissioner. 42 U.S.C. § 405(g); see Rep. & Rec. at 2.

Plaintiff filed an action in the United States District Court for the Middle District of Pennsylvania on September 11, 2001. The Commissioner subsequently filed a Motion to Remand Plaintiff's case for further administrative action and Magistrate Judge Mannion granted that unopposed Motion and ordered remand. (T.R. at 505-11). The Appeals Council, acting on order of our colleague Judge Kane, issued an order directing the ALJ to conduct further review, "including, but not limited to, a reevaluation of the plaintiff's residual functional capacity ("RFC")" based upon all of the evidence of record, including the opinion of Dr. Robertson, and "obtain supplemental vocational expert testimony regarding available jobs, if necessary." (T.R. at 511-12; Rep. & Rec. at 2).

Plaintiff's supplemental hearing was held on March 5, 2003. Plaintiff, his wife, Dolores Mixell, and a vocational expert testified. (T.R. at 466). On March 28, 2003, the ALJ issued an unfavorable decision and currently pending before this Court is Plaintiff's appeal of that decision, filed on January 13, 2005. (Rec. Doc. 1). The case was referred to United States Magistrate Judge Malachy E. Mannion for preliminary review.

2

On January 30, 2006, Magistrate Judge Mannion issued a report recommending that Plaintiff's appeal from the decision of the Commissioner of Social Security be denied as he found that the decision of the Commissioner was supported by substantial evidence.  The Magistrate Judge therefore recommended that Plaintiff's appeal be denied.  (See Rep. & Rec. at 28).  Plaintiff filed objections to the Magistrate Judge's report on February 3, 2006.  (See Rec. Docs. 17, 18).  The matter is therefore ripe for disposition.

The Court will address Plaintiff's objections and adopt the Magistrate Judge's report and recommendation for the reasons cited herein.  After reviewing the ALJ's opinion and the administrative record on which it was based, the Court finds that Magistrate Judge Mannion properly concluded that the ALJ's opinion was based upon substantial evidence.  Therefore, the report and recommendation will be adopted and the case will be closed.

## FACTUAL BACKGROUND:

Plaintiff was born in June 1952, and was fifty years old at the time of the ALJ's March 2003 decision.  (T.R. at 80, 465; Rep. & Rec. at 6).  Although Plaintiff attended special education classes during school, and only completed tenth grade, he obtained a General Equivalency Diploma ("G.E.D.") in 1993. Plaintiff has worked as a salesman, security guard, and gas station attendant.  (T.R.

at 115, 130, 472).  Plaintiff lives with his wife and two sons, ages twenty-nine and thirteen.  (T.R. at 481-82).

## STANDARD OF REVIEW:

When objections are filed to a report of a magistrate judge, we make a *de novo* determination of those portions of the report or specified proposed findings or recommendations made by the magistrate judge to which there are objections.  See United States v. Raddatz, 447 U.S. 667 (1980); see also 28 U.S.C. § 636(b)(1); Local Rule 72.3l.  Furthermore, district judges have wide discretion as to how they treat recommendations of a magistrate judge.  See id.  Indeed, in providing for a *de novo* review determination rather than a *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. See id., see also Mathews v. Weber, 423 U.S. 261, 275 (1976); Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).

We have plenary review of all legal issues.  See Schaudeck v. Com'r of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).  However, our review of the administrative law judge's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence."  Factual findings which are supported by substantial evidence must be upheld.  See e.g.,

4

Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).  Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706, n9 (3d Cir. 1981), and "must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951).  Therefore, a reviewing court must scrutinize the record as a whole.  See Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); see also Dobrowolosky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).  In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  Consolo v. Federal Maritime Commission, 383 U.S. 607, 619-20 (1966).

**DISCUSSION:**

As the Magistrate Judge explained, the Commissioner utilizes a sequential evaluation process in evaluating disability insurance and supplemental security

income claims.  See 20 C.F.R. § 404.1520 and 416.920.  This process requires the

Commissioner to consider, in sequence, whether a claimant (1) engaged in

substantial gainful activity after the onset of the alleged disability, (2) has a severe

impairment, (3) has an impairment that meets or equals the requirements of a listed

impairment, (4) can return to his or her past work and (5) if not, whether he or she

can perform other work in the national economy.  (Rep. & Rec. at 3).

**A.    The ALJ's July 21, 2000 Decision**

In applying the foregoing, the ALJ determined the following, that: (1)

Plaintiff had not engaged in substantial gainful activity since the alleged onset date

of disability; (2) Plaintiff had attention deficit disorder ("ADD"), asthma, arthritis,

and fibromyalgia which were "severe" under 20 C.F.R. § 416.920(b); (3) those

medically determinable impairments did not meet or medically equal one of the

listed impairments in Appendix 1, Subpart P, Regulation No. 4; (4) Plaintiff was

unable to perform any of his past relevant work (20 C.F.R. § 416.965); and (5)

Plaintiff retained a capacity for a limited range of light work.  (T.R. at 22-23).

As the Magistrate Judge explained, the ALJ determined that Plaintiff could:

lift and/or carry 10 pounds frequently and 20 pounds occasionally; stand and/or

walk for 6 hours in an 8 hour workday with normal breaks; and sit for 6 hours in an

8 hour workday with normal breaks.  (T.R. at 22; Rep. & Rec. at 4).  The ALJ also

determined that Plaintiff had some non-exertional limitations.  (T.R. at 23).

Specifically, the ALJ found that Plaintiff should avoid work requiring significant

exposure to dust or fumes, had mild to moderate difficulty understanding and

remembering how to perform basic work tasks, and had mild to moderate difficulty

with concentration and attention.  (T.R. at 23).

Using Medical-Vocational Rule 202.20 as a framework, the ALJ determined

that there were a significant number of jobs in the national economy that Plaintiff

could have performed.  (T.R. at 23; Rep. & Rec. at 4).  Examples of such jobs are

the following: file clerk (800 locally, 250,000 nationally), mail clerk (700 locally,

225,000 nationally), and copy machine operator (200 locally, 50,000 nationally).

As there were unskilled jobs at the light exertional level that Plaintiff could

perform, the ALJ decided that he was not disabled under the Act.  20 C.F.R. §

416.920(f); T.R. at 23; Rep. & Rec. at 4.  The ALJ also found that Plaintiff was a

"younger individual between the ages of 45 and 49" (20 C.F.R. § 416.963) who

had a "high school equivalent education" (20 C.F.R. § 416.964).  Finally, the ALJ

determined that Plaintiff's allegations regarding his limitations were not totally

credible.  (T.R. at 22-23; Rep. & Rec. at 5).

**B.     The ALJ's March 28, 2003 Decision**

In accordance with the above-outlined procedure, the ALJ found in his

March 28, 2003 decision that: (1) Plaintiff had not engaged in substantial gainful

activity since his alleged disability onset date; (2) Plaintiff had osteoarthritis of the

right knee, asthma, and indications of fibromyalgia, all of which were severe under

§ 416.920(b); (3) those medically determinable impairments did not meet or

medically equal one of the listed impairments in Appendix 1, Subpart P,

Regulation No. 4; (4) Plaintiff could not perform past relevant work, and (5)

Plaintiff could perform a range of light work.  (T.R. at 459-65; Rep. & Rec. at 5).

As the Magistrate Judge noted, the ALJ determined that Plaintiff could

perform light exertional work in which he is required to stand and/or walk no more

than four hours in an eight hour workday and that Plaintiff had mild to moderate

limitations with concentration and attention due to pain and needed to avoid

concentrations of dust and fumes.  (T.R. at 464; Rep. & Rec. at 5).  Moreover, the

ALJ found that Plaintiff was approaching advanced age, 20 C.F.R. § 416.963, and

had a high school equivalency education, 20 C.F.R. § 416.964.  (T.R. at 465).  The

ALJ determined that Plaintiff's allegations regarding his limitations were not

totally credible.  (T.R. at 464; Rep. & Rec. at 6).  Despite the fact that the ALJ

found that Plaintiff had no transferrable skills from any past relevant work, 20

C.F.R. § 416.967, and could not perform the full range of light work, using

Medical-Vocational Rule 202.13 as a framework for decision-making, the ALJ

found that there were a significant number of jobs in the national economy that

Plaintiff could perform, including work as a gate tender, a packager, and a

sorter/inspector.  Accordingly, the ALJ found Plaintiff to not be disabled under the

Act.  20 C.F.R. § 416.920(f).

### C.  Plaintiff's Objections to the Magistrate Judge's Report and Recommendation

#### 1.  Failure to Permit Plaintiff's Counsel to Complete her Cross-Examination of the Vocational Expert

In his objections, Plaintiff argued that the ALJ violated both regulatory

authority and procedural due process when he refused to permit Plaintiff's counsel

to pose questions on cross-examination to the vocational expert which included

references to particular educational levels and Global Assessment of Functioning

("GAF") scores.  (Rec. Doc. 18 at 2-5).  Plaintiff submits that with respect to

Plaintiff counsel's attempt to question the vocational expert regarding math,

reading, and spelling abilities reflected in a psychological examination by Dr.

Overcash, the Magistrate Judge concluded that the ALJ erred in limiting counsel's

cross-examination; however, the Magistrate Judge determined that any error by the

ALJ was harmless.  Plaintiff additionally asserts that the vocational expert's

response to a hypothetical conflicted directly with the testimony of the vocational expert at the earlier proceeding in this case, which is "troubling." (Rec. Doc. 18 at 3).

We initially note that the Regulations provide that the ALJ "may ask the witnesses any questions material to the issues and shall allow the parties or their designated representatives to do so." 20 C.F.R. § 416.1450(e). Moreover, as the Magistrate Judge notes, procedural due process entitles a social security claimant to conduct cross-examination of a vocational expert "to the extent required for a full and true disclosure of the facts." See Richardson v. Perales, 402 U.S. 389, 410 (1971) (finding that the admission of consultants' reports satisfies procedural due process because the reports are subject to subpoena and consequent cross-examination); Glass v. Shalala, 43 F.3d 1392, 1396 (10th Cir. 1994) (finding that procedural due process grants claimants a right to cross-examine vocational experts).

After a careful review of the record, we agree with the Magistrate Judge that it does not appear that Plaintiff's counsel was asking the vocational expert to interpret medical evidence, as the Commissioner has suggested. At the administrative hearing, when Plaintiff's attorney attempted to ask the vocational expert to replace the hypothetical individual's high school grade level with lower

grade levels in math, reading, and spelling, as determined by Dr. Overcash's testing, the ALJ told counsel that the question was impermissible because it was based upon testing that did not represent recognized work limitations.  (T.R. at 496-97).  As Plaintiff's counsel argued that the test results represented the work limitations of "difficulty understanding and remembering how to perform work tasks" and she was trying to determine whether the lower grade levels would preclude unskilled work, we do not conclude that counsel was asking the vocational expert to interpret medical evidence.

Although Plaintiff argues that the ALJ improperly limited his counsel's cross-examination of the vocational expert at the hearing, we are in agreement with the Magistrate Judge that counsel was able to ask the vocational expert a rephrasing of the original question regarding educational level that arguably incorporated a greater degree of educational limitation than did the original question as posed.  Specifically, Plaintiff's counsel asked the vocational expert to consider the limitations of "nearly illiterate" and "need[ing] supervision every 10 to 15 minutes in order to stay on task."  (T.R. at 497).  Such questions fulfilled Plaintiff's counsel's stated purpose of including a limitation that would reflect the work limitation of "difficulty understanding and remembering how to perform work tasks."  Id.  We find that Plaintiff's counsel's opportunity to cross-examine

the vocational expert was satisfied in this case.

In addition, Plaintiff argues in his objections that the ALJ erred in not permitting his counsel to ask the vocational expert questions regarding Plaintiff's GAF scores.  Although Plaintiff submits that the vocational expert's familiarity with the GAF scores and their meaning rendered him capable of interpreting such psychological data and extrapolating its vocational relevance, the vocational expert does not possess the expertise required to interpret this type of data.[1]  Plaintiff attempts to distinguish <u>Dobrowolsky v. California</u>, 606 F.2d 403 (3d Cir. 1979), a case cited by the Magistrate Judge which instructed that vocational experts are not to express opinions regarding medical impairments and their effect on functional capacity since they are medical matters, and argues that in this case the vocational expert was not asked to express a medical opinion.  We do not find Plaintiff's attempts to distinguish <u>Dobrowolsky</u> to be availing under the circumstances and he has failed to point to any binding authority in support of his assertion that inclusion of a GAF score in a hypothetical to a vocational expert should not have been precluded by the ALJ.  The vocational expert's familiarity with GAF scores and their meaning does not render him capable of interpreting this type of

---

[1] Although Plaintiff notes that the vocational expert has a Master's degree in psychological counseling, he does not qualify as an "acceptable medical source" under the Regulations as he is not a licensed or certified psychologist.  <u>See</u> 20 C.F.R. 416.913(a).

12

psychological data and extrapolating its vocational relevance.  In that regard, and

as noted, the vocational expert does not possess the expertise required to interpret

this type of data.  See 20 C.F.R. 416.913(a).  In addition, as the ALJ submitted,

GAF scores "involve many factors, many of which are not work-related."  (T.R. at

498).  Finally, the applicable Regulations instruct that it is the ALJ who has the

authority to determine the questions material to the issues in the case, as well as the

subject and scope of the vocational expert's testimony.  See 20 C.F.R. §

416.1450(e).

> ### 2.   Determination that Plaintiff is Currently Functioning at a Level Equivalent to that of a High School Graduate

Plaintiff argues in his objections that the ALJ erred in finding that he has the

equivalency of a high school education.  As the Magistrate Judge noted, the

relevant Regulation for determining educational level, which the ALJ cited in his

decision, does not list an education level for high school "equivalency."  (T.R. at

465; 20 C.F.R. § 416.964).  Instead, it lists the categories of "high school education

and above" and "limited education."  20 C.F.R. § 416.964(b)(3), (4).  "High school

education and above means abilities in reasoning, arithmetic, and language skills

acquired through formal schooling at a 12th grade level or above."  Id. at (b)(4).

Limited education reflects "a 7th grade through 11th grade level of formal

education."  Id. at (b)(3).  We agree with the Magistrate Judge that the Regulation

13

does not accordingly appear to give any specific guidance for determining at what grade level an individual who has acquired a GED falls.

In the report, the Magistrate Judge did not find there to be substantial evidence to support the ALJ's determination that Plaintiff's education level was high school equivalent; however, he did not recommend that the case be remanded on that issue in light of the fact that the vocational expert testified that a "nearly illiterate" individual could perform two of the three jobs he had identified.  (Rep. & Rec. at 23).  For the reasons that follow, we are in agreement with the Magistrate Judge.

First, as noted by the Magistrate Judge, the applicable Regulation states that the "numerical grade level that you completed in school may not represent your actual educational abilities."  20 C.F.R. § 416.964(b).  However, if there is evidence to contradict it, we will use your numerical grade level to determine your educational abilities."  Id.  A thorough review of the record confirms the Magistrate Judge's finding that, assuming Plaintiff's GED represented a numerical grade level of twelve, evidence contradicts that numerical grade.  At his most recent evaluation in 2000, seven years after he obtained his GED, Plaintiff had grade scores of 5.6 in word recognition, 3.5 in spelling, and 5.6 in math.  (T.R. at 3610).  Moreover, the increase of Plaintiff's reading and spelling scores to only a

14

fifth grade level in 1993, again, the same year in obtained his GED, does not necessarily indicate that Plaintiff's GED is reflective of a high school education. (T.R. at 712).

Second, education level serves primarily as a factor in determining an applicant's work abilities.  20 C.F.R. § 416.964(a).  At the hearing, when asked about a hypothetical individual who was "nearly illiterate," the vocational expert responded that such an individual would still be able to perform work as a packer, sorter, or cafeteria attendant.  (T.R. at 497).  While we are fully cognizant that the ALJ bears the burden of proof at step five of the sequential evaluation to produce and develop vocational evidence, we agree with the Magistrate Judge that a remand is not appropriate on this issue.  While there is not substantial evidence to support the ALJ's determination that Plaintiff's education level was high school equivalent, in the interest of judicial economy and under the circumstances, a remand would fail to serve a purpose as the ALJ would still have met his burden at step five of the sequential evaluation because an educational level of "nearly illiterate" would not rule out two of the three jobs the ALJ found Plaintiff could perform and which exist in significant numbers in the national economy.[2]  See 20 C.F.R. §

---

[2] Although Plaintiff submits that in the prior hearing, the vocational expert testified that a "nearly illiterate" individual with Plaintiff's other restrictions, as found by the ALJ, would be incapable of performing competitive work activity, Plaintiff has appealed the ALJ's March 28, 2003 unfavorable decision, which is being considered by this Court.

416.960(c)(2).

### 3.    Failure to Conclude that Plaintiff's ADD was Severe, Despite Having Done so in his Prior Decision

In his objections, Plaintiff argues that the ALJ erred in not concluding that Plaintiff's ADD was severe, despite having done so in his prior decision.  In that regard, Plaintiff maintains that the record is replete with references to his difficulty with attention and learning and asserts that the ALJ's initial decision that Plaintiff suffers from severe ADD was correct based upon the record as a whole.  Plaintiff contends that the ALJ's failure to include any mental impairments as severe in his second decision is erroneous as a matter of law.

Plaintiff accurately submits that the ALJ's initial decision of July 21, 2000 included a determination that Plaintiff's ADD was severe.  (T.R. at 19).  As the Magistrate Judge explained, the remand order in this case did not, as Plaintiff contends, restrict the ALJ on remand to only evaluate Plaintiff's RFC and obtain supplemental vocational expert testimony.  The Magistrate Judge's order granted the Commissioner's unopposed Motion to Remand the case pursuant to sentence four of 42 U.S.C. § 405(g) for "further review, <u>including, but not limited to</u>, a reevaluation of Plaintiff's residual functioning capacity."  (T.R. at 506) (emphasis added).

The Third Circuit Court of Appeals has held that fundamental fairness

16

requires that social security disability claimants who file appeals of a discrete issue be sufficiently apprised of the risks inherent in their appeals, including the risk of losing benefits which they had previously won.  Chrupcala v. Heckler, 829 F.2d 1269, 1273 (3d Cir. 1987); Powell v. Heckler, 789 F.2d 176, 178 (3d Cir. 1986). In the case sub judice, Plaintiff was provided with notice that the ALJ could review issues other than Plaintiff's RFC, the requirement for fundamental fairness was therefore satisfied.  Id.  It is notable that Plaintiff did not oppose the Commissioner's Motion to Remand but, as the Motion states, was "in agreement with this Motion to Remand."  (T.R. at 506).  As the Magistrate Judge aptly stated, had Plaintiff wanted to limit the ALJ's ability to review other issues on remand, he could have challenged the non-limiting language of the order.  The Third Circuit Court of Appeals requires "proper notice to the claimant" before the Commissioner can extend the scope of review on remand and here, proper notice was built into the language of the Commissioner's unopposed Motion to Remand.  See Powell, 789 F.2d at 178 (holding that Appeals Council could not extend the scope of review on remand to the ALJ "without proper notice to the claimant").

In addition, we do not find that the ALJ erred in failing to find that Plaintiff's ADD was severe, despite having done so in his prior decision.  The ALJ acted in accordance with the Motion to Remand previously referenced and

applicable Regulations when he reevaluated Plaintiff's impairments at step two of

the sequential evaluation.  Plaintiff's references to difficulties with attention and

learning are countered by his statements that he drove a car, could handle his own

bills if necessary, got along with people in authority, had good attendance, and was

able to keep up with his work when he worked in the past.  (T.R. at 104-5, 109).

Moreover, with regard to step two of the sequential evaluation process, the ALJ

addressed Plaintiff's ability to pass the GED examination, his ability to use a

computer and compose e-mails, and his ability to read and understand magazines

and newspapers.  (T.R. at 460).  Accordingly, we do not find that the ALJ's failure

to include any mental impairments as severe was erroneous as a matter of law.

### 4.  Determination that Plaintiff was Capable of Standing for More than Three Hours

Plaintiff's final argument in his objections concerns whether the Magistrate

Judge erred in concluding that the ALJ's finding that he could stand for four hours

per day was supported by substantial evidence.  Plaintiff asserts that the ALJ's

assessment of Plaintiff's capacity for standing is contrary to the clear weight of the

evidence and the decision should be reversed or remanded for further

consideration.

In his report, the Magistrate Judge agreed with Plaintiff that the ALJ rejected

all of the medical opinions of record in deciding that he could "stand and/or walk

18

no more than four hours in an eight hour workday;" however, the Magistrate Judge

explained that it is the ALJ's prerogative to do so.  (Rep. & Rec. at 25-28; T.R. at

462).  In addition, the Magistrate Judge noted that while none of the medical

opinions on the issue suggested a limitation of four out of eight hours, the opinions

made suggestions on both sides of that number.  "That the ALJ chose a number

that none of the medical experts had suggested, but that was more stringent than

some and more lenient than others, is consistent with the fact that it is his

prerogative to do so."  (Rep. & Rec. at 25-26; 20 C.F.R. § 416.927(e)(2), (3)).  The

Magistrate Judge concluded that substantial evidence supports the ALJ's

determination that Plaintiff could stand or walk for four hours out of eight hours

per day.  (Rep. & Rec. at 27-28).

It is important to initially note that our role at this stage of the review is to

determine whether there is substantial evidence in the record to support the

Commissioner's decision.  Generally, the Commissioner gives more weight to

treating physicians.  20 C.F.R. § 1527(d)(2).  However, a treating source opinion

that is not supported by medically acceptable clinical and laboratory diagnostic

techniques or is inconsistent with other substantial evidence is not binding on the

Commissioner.  20 C.F.R. § 404.1527.  The determination of whether a claimant is

disabled is for the Commissioner to make in light of all of the evidence in the

record.  20 C.F.R. §§ 404.1527(b), 404.1527(e)(1).

Although Plaintiff strenuously argues that the ALJ's assessment of Plaintiff's capacity for standing is contrary to the clear weight of the evidence presented, we find that the ALJ thoroughly considered, addressed, and discussed the opinions of Plaintiff's physicians, as well as the opinion of the state agency medical consultant in determining that the assessments which limited Plaintiff to less than four hours of standing per day were not supported by clinical findings justifying such a restriction.  Consider, for example, that the ALJ assigned limited weight to Dr. Robertson's assessment made in August 1998 which provided that Plaintiff could be precluded from prolonged walking and standing, "as he does not explain the basis for his findings and they are inconsistent with the claimant's activities[.]"  (T.R. at 462).  "Although the claimant has some limitations in standing and walking as reflected in the residual functional capacity assessment below, I give little weight to several assessments that he is able to do so for less than four hours a day . . . as none of these assessments are supported by clinical findings which would justify such a restriction."  Id.  In his decision, the ALJ thereafter addressed the state agency assessment, as well as the assessments made by Drs. Robertson, Brown, Overcash, Turchi, and Kramer.  Id.  The ALJ concluded, after considering the evidence in the record as a whole, that Plaintiff

can perform light exertional work in which he is required to stand and/or walk no more than four hours in an eight hour workday, has mild to moderate limitations with concentration and attention due to pain, and needs to avoid concentrations of dust and fumes.  Id.

After a careful review of the record in this case, we agree with the Magistrate Judge that while none of the medical opinions on the issue suggested a limitation of four out of eight hours, the ALJ chose a number that was more stringent than what some of the medical experts suggested, and more lenient than others, which is within the ALJ's prerogative to do so.  (Rep. & Rec. at 25-28; 20 C.F.R. § 416.927(e)(2), (3) (stating that "although [the ALJ] will consider opinions from medical sources on issues such as . . . residual functional capacity . . . the final responsibility for deciding these issues is reserved to [him]").  In addition, the Regulations state that the ALJ "will assess [a claimant's] residual functional capacity based upon all of the relevant medical and other evidence, 20 C.F.R. § 416.945(a)(3), which took the form of Plaintiff's activities in this case and were both substantial and supportive of the ALJ's determination.  The Magistrate Judge exhaustively detailed such "other evidence" in his report, which is not necessary to reiterate at this juncture, except to note that it provides substantial evidence to support the ALJ's decision.  (See Rep. & Rec. at 26).  Finally, we agree with the

Magistrate Judge that the ALJ's finding that Plaintiff could walk no more than four hours in an eight hour workday is also supported by diagnostic testing, specifically, October 1998 x-rays of the cervical and thoracic spine, a May 1999 x-ray of Plaintiff's right knee, a November 1999 MRI of Plaintiff's lumbar spine, and a January 2002 EMG/NCS of the bilateral lower extremeties and an EMG of the L-S paraspinal muscles.  We therefore conclude that substantial evidence supports the ALJ's determination that Plaintiff could stand or walk for four hours out of eight hours per day.

**NOW, THEREFORE, IT IS ORDERED THAT**:

1.   Magistrate Judge Mannion's Report and Recommendation (doc. 16) is

adopted in its entirety for the reasons stated herein.

2.   Plaintiff's appeal of the decision of the Commissioner of Social

Security is denied.

3.   The Clerk is directed to close the file on this case.


<u>s/ John E. Jones III</u>
John E. Jones III
United States District Judge